<div style="margin-left">Ashley<br>v.<br>Willard and<br>Hall.</div>

one is the payment of both.   If the promisee is indebted to both or either, they may join in a declaration in set-off, and have several counts; some applicable to the demands of one, and some to the demands of the other; or entirely to the demands of one, or the joint demands of both.

<div style="text-align:right">Plaintiff nonsuited.</div>

*Cephas Smith*, Junior, for the plaintiff.
*Chauncey Langdon*, for defendant.

———————

Bowne, Appellant,

*against*

Ralph Page, Abel Larkin, and Nathan Osgood.

*A. mortgages land to B. who brings a bill in chancery to foreclose the equity of redemption against him, and by an interlocutory decree E. and F., who are not privies to the mortgage, (but claim title to several parts of the lands by deed or ancient adverse possession,) are made parties to the bill, and B. obtains a decree foreclosing the equity of redemption by a day certain nisi. If B. after the expiration of the term allowed for redemption, brings ejectment against the three, and A. is defaulted, he cannot show the decree in chancery in evidence to estop the other two defendants from impeaching his title to the lands, or showing a better title to the whole or any part of them in themselves.*

EJECTMENT.   The plaintiff demanded seisin and possession of lands in *Rutland.*

*Nathan Osgood* suffered a default.

*Ralph Page* pleaded *severally* the general issue as to one acre of the land, and certain mill privileges, and disclaimed as to residue.

*Abel Larkin* pleaded severally the general issue as to one moiety of the land demanded, and disclaimed the other moiety.

The plaintiff offered in evidence to the Jury a decree of the Court of Chancery, promulgated *May*

adjourned term, A. D. 1800, by which the present plaintiff, as orator, foreclosed the equity of redemption of the land against the two defendants and *Nathan Osgood*, then respondents.

Bowne
v.
Page et al.

The facts are, that *Nathan Osgood*, Esquire, mortgaged the land to the plaintiff by deed dated *September*, 1792. Before the equity of redemption was foreclosed, *Osgood* executed a deed of one acre of the land, and certain mill privileges, to *Ralph Page*, and *Abel Larkin* held one moiety of the land by an ancient adverse possession. The plaintiff brought his bill in chancery against *Osgood* to foreclose the equity of redemption, and upon suggestion to the Court, that *Page* and *Larkin* were interested in the premises mortgaged, he obtained an interlocutory decree that they should be made parties to the bill. Subpœnas issued citing them to appear, of which they took no notice, and the bill was taken *pro confesso* against all, and a decree was made that the equity of redemption should be foreclosed against the three by a day certain *nisi*.

*Chipman*, counsel for the two defendants, now objected to the decree's being read in evidence to the Jury. The question now in issue to the Jury is, whether the plaintiff has a good title in fee to the land demanded in the declaration, and not, as between the mortgagor and mortgagee, whether the conditional deed has become absolute or not. A decree in chancery does not bind the legal interest in the estate, but the person only. *Harrison's Chancery*, p. 324.

*Osgood* claimed title to the land, and mortgaged all his right and title to the plaintiff, who has fore-

closed the equity of redemption as relative to him, and now has brought his action of ejectment to obtain possession; *Osgood* has been defaulted, and the plaintiff may have possession of all his right in the land, but the mortgage contract between the plaintiff cannot affect the right of others not privy to it. It is true the now defendants were cited in and made parties to the chancery suit; but this was not for the benefit of the orator, but for their benefit, that they might have a right to redeem by paying the mortgage money; but they considered themselves in no way interested, and did not appear. *Page*, it is true, purchased under the mortgagor, and subsequent to the mortgage; but *Larkin* holds an ancient adverse possession of a moiety of the mortgaged premises, and has disclaimed all right and title to the other moiety. The question is, can the decree in Chancery estop the defendants from impeaching the plaintiff's title, or showing a title in themselves to such sections of the land as they respectively claim. Does the decree in chancery create a fee in the orator, now plaintiff. This would be augmenting the chancery powers to an extent never before contemplated. The objects of Chancery with us are frauds and trusts; but when even a specific performance of a contract to convey land is enforced by a decree, it is under a penalty, and the party has his election to pay the penalty or execute the deed; for a decree in Chancery can only bind the person, and not the estate. If *Larkin* had appeared when made a party to the bill in Chancery, he never could have shown his adverse possession or title, for the fee of the land was not in issue. It was a mere question between the mortgagor and mortgagee. The bill stated, that the

respondent *Osgood* had mortgaged certain lands to the orator, and that the condition of the mortgage had been broken, and therefore prayed in the usual form, that the Court of Chancery would decree that *Osgood* the mortgagor should pay the sum for which the land was pledged, by a day to be assigned by the Court, or be for ever foreclosed from redeeming the mortgaged premises. By the practice in Chancery, if the mortgagee does not include in his bill all who are interested in the land mortgaged, they may afterwards, by bill of revivor, open the mortgage, and have a day to redeem. To avoid this, the orator procured the present defendants, by an interlocutory decree, to be made parties to the bill; subpœnas issued, and they did not appear; and the decree, as relative to them, merely saves a right to redeem, but by no means touches their right or title to the land. *Osgood* executed *a deed* to the plaintiff with a condition of defeasance, which, if not complied with on his part, was to become absolute as against him. By the decree in Chancery the deed has become absolute as against him; his right and title to the land has passed to the plaintiff; he acknowledges this by his default in the present action; but if he had defended the present suit, he would have been estopped from impeaching the plaintiff's title derived from himself, and the decree might have been read in evidence against him, to show that the deed, which was conditional, had become absolute; but this decree cannot thus be shown in evidence against the present defendants, who have no privity in the mortgage deed.

The point in issue to the Jury is, whether the plaintiff has a title in fee to the land demanded in his

Bowne
v.
Page et al.

declaration; and this is an issue which can only le-gally be tried in the common law courts. Here the defendant *Page* may show that the fee of the acre of land which he claims is in himself, and the defendant *Larkin* may establish a title limited in him by ancient adverse possession, and both may show that the fee of such sections of the land as they respectively claim was not in *Osgood*, the plaintiff's grantor.

*Cook*, in reply, insisted, That the decree in Chancery estopped all who were made parties to it from contesting the orator's, now plaintiff's, title to it, derived from the mortgagor, and of showing a title by purchase or possession in themselves. He cited *Harrison's Chancery*, p. 583, 584. and 636. " All parties to the suit or decree shall be bound by the decree if they are of full age, *compos mentis*, &c. and where any come in *pendente lite*, and while the suit is in prosecution regularly, the decree bindeth them." " Decrees of this Court are equal to judgments at law, and their execution as effectual or more so."

Vide *Newland's* edit. p. 324.

*Sed per Curiam.* The decree in Chancery cannot be read in evidence.

*John Cook* and *Darius Chipman*, for the plaintiff.
*Daniel Chipman*, *Chauncey Langdon*, and *Cephas Smith*, junior, for defendants.